No. 22.—GEORGE T. LONG, plaintiff in error, *vs.* JAMES H. LEWIS, defendant.

[1.] A declares against B, and says that it was agreed between them two, that he, A, should serve B as an overseer, for thirteen months, for $150: but does not say that the agreement was in writing. A's evidence does not show whether the contract was in writing or not. B moves for a nonsuit, on the ground that the contract is within the Statute of Frauds: *Held*, that this motion was well over-ruled.

[2.] A nonsuit ought to be granted, if essential allegations in the declaration are not proved.

[3.] A new trial ought to be granted, if the verdict is contrary to the evidence.

Complaint, in Henry Superior Court. Tried before Judge STARKE, January Adjourned Term, 1854.

This was an action brought by James H. Lewis, against George T. Long, on a contract stated to have been entered into between them, December 1st, 1850, by which it was agreed that Lewis should serve Long, as overseer, for and during the space of 13 months next ensuing, and that Long should pay him therefor, the sum of One Hundred and Fifty Dollars.

The declaration stated that plaintiff had performed his part of the contract, for more than three months, and was ready to have performed the whole, but was not permitted to do so by the defendant: wherefore, he claimed the One Hundred and Fifty Dollars, as agreed upon.

The defendant filed pleas of the general issue, and that the contract was void, by the Statute of Frauds, as being a verbal contract, not to be executed within one year.

The following is the testimony introduced on either side:

### FOR THE PLAINTIFF.

James J. Mitchell, by interrogatories and direct examination, swore—

1st. That he knew the parties, and the plaintiff was in the employment of the defendant, as overseer; that Lewis worked

very hard, while in the employment of defendant.   He had a great deal of work done while he was in the employment of Mr. Long; thought that Mr. Lewis was a very hard-working man; frequently heard the hands working late after night and before day, while they were under Mr. Lewis.

2d.  Heard defendant say that plaintiff was to live with him thirteen months for $150.   Mr. Lewis set in to oversee for Mr. Long, in December, 1850, and quit there in March, 1851. Does not know exactly how long Mr. Lewis was in the employment of Mr. Long, but thinks it was over three months; did not know the cause why plaintiff quit defendant, but heard Mr. Long say he told his negro to tell Mr. Lewis, if he was not going to do better, he might leave, and he would employ somebody else.   Knows nothing more that would benefit plaintiff.

## CROSS ANSWERS.

1st.  Heard the plaintiff say that he went out one morning, some two hours before day, in the new ground, to mend up some brush heaps and log heaps; and after mending them up, he lay down by the fire and went to sleep.

2d.  That witness heard plaintiff say he could get along with defendant, if it was not for his family.

3d.  Never knew plaintiff to leave or neglect his business, while in defendant's employment; never heard any conversation between plaintiff and defendant, about plaintiff staying. Do not know whether defendant wanted plaintiff to stay with him or not.   Knows nothing more that would benefit defendant.

William A. Lewis sworn, says : That defendant was to give plaintiff $150 for thirteen months' services, commencing in December, 1850, and ending in December, 1851.   Plaintiff went to work with defendant; witness saw him at work there. Plaintiff quit defendant in March, 1851.   In January, 1851, heard defendant say he was well pleased with plaintiff; that he was a very good hand.

Cross-examined, says: I had this conversation with defendant, in January, 1851; saw plaintiff in defendant's employment, in the latter part of March, 1851. Witness is plaintiff's brother.

Cross-examined, says: I had this conversation with defendant, in January, 1851; saw plaintiff in defendant's employment, in the latter part of March, 1851. Witness is plaintiff's brother.

William Berry sworn, says: That plaintiff worked for defendant, from December, 1850, until towards the spring thereafter; was never in the plantation during the time, but frequently passed and saw plaintiff at work. He appeared to be getting along well; done as much work as I thought ought to have been done.

Cross-examined, says: I paid no particular attention to plaintiff's conduct. Plaintiff appeared to be controlling the hands; saw him whipping a little negro in the field.

John Johnson sworn, says: I have seen plaintiff at work for defendant, frequently, as I frequently passed; thought they were getting along well, from the amount of work I saw done, for the number of hands; thought they were doing well; dont know when he left.

Cross-examined, says: I recollect plaintiff coming one time, to where I was at work; he was going to Mr. Campbell's. I live about a mile from defendant's, and Campbell lives three miles from defendant's. It was, I think, in January, 1851; do not recollect his business: it was about the middle of the week. Plaintiff quit defendant and remained away several days, before he finally quit.

Thomas Gallman sworn, says: I saw plaintiff at work for defendant, in December, 1850. Saw him at work, one time, in the rain. I thought, from what I saw, plaintiff was doing enough of work for the number of hands. I think plaintiff commenced work with the defendant in December, 1851, and worked thirteen months. Saw him at work twice. I went to get the defendant's steers, and worked in the place of one of the hands, until he went and got the steers for me. I thought

plaintiff was getting along well with his work.   In a conversation with the defendant, he told me he had told one of the negroes to tell plaintiff, if he did not do better he might leave. He said plaintiff had left, and we were talking about his leaving, the way the conversation commenced.   He said plaintiff had gone to sleep in the new ground.

Christian Lewis sworn, says: Plaintiff and myself, after plaintiff had left defendant, went to defendant and told him he still wished to live with him; defendant made no answer. This was two or three days after plaintiff left defendant. Plaintiff offered to leave it to men, and defendant said he would do right about it.   I do not remember any thing further that was said.

Cross-examined, says: Plaintiff had only been at my house two or three days, before I went back with him.   Saw another white man at work with defendant's negroes, when we went back.   Plaintiff and myself went back to know whether defendant had employed him another overseer.   I am not positive to the time we went back.   Plaintiff closed.

The testimony of plaintiff being closed, defendant moved to nonsuit plaintiff—

1st. Because the contract proven in said case was void, it being a contract not to be executed in a year from the making of it.

2d. Because plaintiff's testimony proved that he left the employment of defendant, without any cause, at his own option and will.

Which motion was over-ruled on both grounds, and defendant's Counsel excepted.

The Court ordered the case to proceed, and the defendant introduced the following evidence, to-wit:

## TESTIMONY OF DEFENDANT.

Martha M. Roundtree, by interrogatories on direct examination, swore: That plaintiff was in the employment of defendant, as overseer.   He set in about 1st December, 1850, and

was in defendant's employment until about 19th or 20th March, 1851. He left about the time above mentioned. I heard the plaintiff tell defendant he wished to be off, and that defendant might look him out another overseer. The defendant asked his reasons for wishing to leave. Plaintiff said he could not please his family. Defendant said he did not employ him to please his family, but to attend to his business. Defendant asked him what was the matter—he said that defendant's daughter, Mulissa C. Long, had complained of his work that day. Defendant told him again, that he did not employ him to please his family, but to attend to his business: and if he would make him sure of his services, he would give his notes and as good security as there was in the district. Plaintiff answered, " You may look out another man to attend to your business". Defendant told him to bring him another man to attend to his business, for defendant said he knew of none worth employing, for the time had passed ; all men engaged in that business, worth having, were employed. Plaintiff said he was going to leave any how, and he would leave it to any two men what the time was worth that he had served. Defendant told him he had not employed any two men to make his contract, nor would he employ any two men to break it. Defendant urged him to stay and carry out his contract. Plaintiff refused to do so. This conversation took place on the 19th of March, 1851.

To cross-interrogatories, she answers : She has fully and particularly stated the whole of the conversation referred to in the answers to the second direct interrogatory. Defendant did not get angry—he spoke in a mild manner throughout the conversation, and persuaded plaintiff to stay his time out, for which he had set in. Did not hear defendant tell plaintiff that his wife had told him any thing about that day's work. Witness has answered, in the second direct interrogatory, all she knows about its being left to neighbors. Did not hear defendant tell plaintiff, if he did not do better, he might leave his employment. Did not hear defendant rave or swear. Defendant did not say he would not pay him any thing for his

Long *vs.* Lewis.

work; but that he had not called upon his neighbors to make his contract—neither would he call upon them to break it. Did not hear defendant say that plaintiff should not stay after he had cleared his new ground, or Fayetteville Court. Heard defendant say, that if plaintiff left, he could not get in his new ground, and that it would injure him over two hundred dollars. Did not hear defendant say any thing about plaintiff having to leave. Did not hear plaintiff express a desire to stay all the year. Did not hear the defendant say any thing about needing the plaintiff after Fayetteville Court, or that he should then leave. Witness was frequently at defendant's, at meal-time. Plaintiff was treated as one of the family. Did not hear plaintiff say any thing about the family mistreating him, in order to drive him off. Witness is the daughter of the defendant—knows nothing of any mistreatment from the defendant and family, to run the plaintiff off.

Knows nothing more.

William Russell sworn, says: Plaintiff told me he had no objection to living with defendant; that defendant treated him well, and did not interrupt him in his work. This he told me before he left defendant's, and afterwards. He also said he had come back to defendant's, to live with him, and repeated, that he had nothing against Mr. Long. He said he could live with Mr. Long, in peace and quietness, forever. This last conversation was after he left defendant's. Plaintiff had left him once before, and went back.

Cross-examined: Had the second conversation with plaintiff, near my house, in the road, close to my gate.

Alfred Stegar sworn, says: Plaintiff said, after he had quit the business of the defendant, that defendant did not want him to leave; that Mr. Long had treated him well—but he had left the defendant's. This he repeated several times.

Cross-examined, says: This conversation was in April, 1851. He said the reason he left, he could not get along with some of the family. He said the old lady complained of him for getting up before day, and waking up the negroes before day,

and going to work before day.   This conversation I had with plaintiff, was after he quit entirely.

William M. Long sworn, says: I am defendant's son, and acted as his agent in employing plaintiff.   The contract was: The defendant was to give the plaintiff $150, for 13 month's services; and if he did not serve his time out, he was not to have any thing.   I made the contract, under instructions from the defendant.   Defendant has five hands under plaintiff; the hands, besides building a chimney, were chiefly employed in clearing land—30 or 35 acres cleared, but not fenced.   Plaintiff left the 19th or 20th of March, 1851.   Heard the old man Christian Lewis testify.   In January, 1852, he and his son come back and offered to leave it to men, to settle between plaintiff and defendant.   Defendant refused to settle, by giving his note; thinks this was the time referred to by said Christian Lewis, in his testimony.

David Kuglar sworn, says: Defendant and myself made a contract for my son to oversee for him, on the 24th March, 1851, until Christmas; and my son set in and overseed for defendant, until November of that year, and then quit by consent of defendant, to go to school.   There never was any difficulty between defendant and witness' son—they got along well together.

Wm. Reid sworn, says: Had a conversation with plaintiff about his leaving defendant—plaintiff said defendant did not want him to quit, but he did quit.

Cross-examined, says: plaintiff said he could not stand defendant's family, that they mistreated him.   He said Mrs. Long threw a shoe at him, and complained of him.   He said defendant had sent a negro to tell him if he did not do better, he might quit.   This conversation was after plaintiff had left defendant's.   Plaintiff said he and defendant could get along well together.

The testimony having closed, defendant's Counsel asked the Court to charge the Jury, "that if the plaintiff and defendant mutually agreed to rescind the contract between them, that the plaintiff, in this form of action in said case, could not reco-

ver"—which the Court declined doing—to which refusal to charge, defendant's Counsel excepted.

The Court charged the Jury, as follows:

If plaintiff and defendant entered into a contract, in which plaintiff undertook to oversee for the defendant thirteen months, and in consideration thereof defendant was to pay him $150, and if the plaintiff, pursuant to the agreement, entered into the service of the defendant, and faithfully performed the contract on his part, for several months, and was, while so engaged in the faithful execution of the contract, dismissed and discharged from the employment of the defendant, without just cause, and was, thereby, hindered from the completion of the service agreed on ; then if you find, from the evidence, such a state of the facts as this, you will render a verdict for the plaintiff, for the full amount agreed on by the parties, for the 13 months' service.

But if you find the contract as above, and if you find, from the evidence, that the plaintiff voluntarily, without the assent of the defendant, abandoned the contract, and left his service without just cause, before the completion of the term of service agreed on, then the plaintiff is entitled to recover nothing.

I have been requested by defendant's Counsel, to charge you, " that if plaintiff and defendant mutually agreed to rescind the contract, that the plaintiff, in this form of action, cannot recover." I must decline so to instruct you: but if, when the plaintiff left the service of the defendant, the parties mutually agreed to rescind the contract, then you will find for the plaintiff rateably, according to the time he actually served. If the parties agreed to separate, then it is but right the overseer should be paid for the time he actually served, at the rate he agreed on.

The Jury found for the plaintiff One Hundred and Fifty Dollars, and costs of suit.

Whereupon, the defendant moved for a new trial, on the following grounds:

XVI—21

1st. Because the Jury found contrary to evidence, and without evidence.

2d. Because the Jury found contrary to the charge of the Court.

3d. Because the Court erred in not deciding that the contract proven in said case, was void, it being a contract in parol, and not to be executed in a year from the making of it.

4th. Because the Court erred in refusing to charge the Jury, that if the parties, to wit: plaintiff and defendant, mutually agreed to rescind the contract between them, that the plaintiff, in the form of action before the Court, could not recover.

5th. Because the Court erred in not ordering a *non-suit*, when moved by defendant's Counsel, after the testimony of plaintiff had closed.

Which motion was over-ruled by the Court.

Counsel for defendant excepted, and allege as error the various rulings of the Court, as excepted to.

McCUNE; STELL, for plaintiff in error.

DOYAL; SPEER, for defendants.

*By the Court.*—BENNING, J. delivering the opinion.

The motion for a non-suit in this case, was put on two grounds: First, that the contract sued on, was one which was not "to be executed within a year from the making of it", and yet was not in writing.   Second. That "the plaintiff's testimony proved that he left the employment of defendant without any cause, and at his own option and will."

[1.] As to the first ground, it is sufficient to say, that it does not appear, from the declaration, or the proof, that the contract was not in writing.   The contract may have been in writing. And as an illegal act is not to be presumed, it is not to be presumed that the contract was not in writing.   (2 *Saund. Pl. and Ev.* 126.)

This ground, therefore, was not sufficient to support the motion.

As to the second ground:

The only "cause" which the defendant in error, by his proof, showed for failing to perform his part of the contract, was this saying of the plaintiff in error, in conversation with the witness Gallman: "In a conversation with the defendant, he told me he had told one of the negroes to tell plaintiff if he did not do better, he might leave." The witness added, "He said plaintiff had left, and we were talking about his leaving, the way the conversation commenced. He said plaintiff had gone to sleep in the new ground." This is all the cause. And this is not enough.

First. It does not appear that the negro ever delivered the message. Second. The message, if delivered, imported a permission—not a command—a permission to leave, if he, the overseer wished to leave—in other words, imported a willingness on the part of the employer, to *cancel* the agreement. Third. But a willingness to cancel it, only on condition—on the condition that the overseer "did not do better." The employer having reference, doubtless, to the overseer's having " gone to sleep", and in the new ground. If the overseer was willing to do better than going "to sleep" in the new ground showed him to be doing, the employer was willing for him to stay; and in that case, the employer did not offer the overseer the option of a rescission.

This evidence did not make out the allegations of the overseer in his declarations—the essential allegations that he was ready to perform his part of the contract, but was not permitted to perform it by the employer. On the contrary, it disproves those allegations. It shows that the overseer left his employer in such a way, as at the very least, to deprive himself of all claim on the employer for any pay, except for the time he had stayed with the employer. But his suit was for pay for the whole time—was for the full amount agreed to be paid him for the service to be rendered for thirteen months.

[2.] This being so, the second ground of the motion for a non-suit was good, and the non-suit on it should have been granted.

Was the verdict contrary to the evidence? This was one of the grounds of the motion for a new trial.

[3.] We think it was. Weak as was the case of the plaintiff below, as made by his evidence, it was rendered still weaker, if that were possible, by the evidence of the defendant.

According to the evidence of the defendant, the defendant "did not want him (the plaintiff) to quit, but he did quit;" and according to that evidence, the defendant "treated him well:" According to that evidence, his reason for leaving his employer was, that "he could not get along with some of the family." But that evidence shows nothing in the conduct of any of the family, sufficient to prevent him from performing his part of the contract.

As to the ground with respect to the Statute of Frauds, the same may be said of it that was said of the same ground in the motion for a non-suit. There is nothing in the evidence to show that the contract was not in writing.